## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **DONNA M. GOFFRON,** | ) | |
| | ) | **No. 17 C 3169** |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge M. David Weisman** |
| **v.** | ) | |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Deputy Commissioner for Operations,** | ) | |
| **performing the duties and functions not** | ) | |
| **reserved to the Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna M. Goffron appeals the Commissioner's decision denying Plaintiff's claims for Disability Insurance benefits and Supplemental Security Income benefits under §§ 216(i), 223, 1611, and 1614 of the Social Security Act ("SSA"). For the reasons set forth below, the Court reverses the Commissioner's decision.

### Background

This is the second time the denial of Plaintiff's disability benefits has been litigated in court. Plaintiff applied for benefits on February 17, 2010, alleging a disability onset of October 30, 2009 due to seizures, bipolar disorder, and depression. (R. 340–50; 469.) The Administrative Law Judge ("ALJ") issued a partially favorable decision finding that Plaintiff was not disabled prior to January 1, 2013, but became disabled on that date and has continued to be disabled. (R. 1113–1130.) Plaintiff requested judicial review of the ALJ's decision (R. 1146–49) and the matter was eventually remanded on February 1, 2016. (R. 1154–65.) On December 29, 2016, the ALJ again issued a partially favorable decision, finding that Plaintiff became

disabled on January 1, 2013 and has continued to be disabled. (R. 1040–1070.) The Appeals Council denied review (R. 1–3), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether she is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden

is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 4, 2009. (R. 1048.) At step two, the ALJ found that beginning or after November 4, 2009, Plaintiff had the following severe impairments: "seizure disorder controlled with medication, bipolar disorder, degenerative brain disorder with cerebral atrophy, tremors, syncopal episodes and memory loss, and history of substance abuse in full sustained remission." (R. 1048.) At step three, the ALJ found that prior to January 1, 2013, Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. 1049.) This finding led the ALJ to conclude at step four that although Plaintiff could not perform any past relevant work prior to January 1, 2013, Plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels" with certain exceptions. (R. 1055.) At step five, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could have performed, and thus she was not disabled prior to January 1, 2013. (R. 1067.)

**Evaluation of Opinion Evidence**

Plaintiff contends that the ALJ erroneously weighed the opinion evidence of non-examining physicians. The regulations state that "because nonexamining sources have no examining or treating relationship with [the claimant], the weight [given] their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. §§ 404.1527(c)(3). Generally, "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4).

Dr. Freeman

Although Dr. Freeman's testimony is consistent with Dr. Shapiro's testimony (discussed further below), the ALJ "did not give Dr. Freeman's opinion great weight," finding his opinion "speculative" and "not supported by the objective medical evidence." (R. 1063.) To the contrary, Dr. Freeman's opinion relied heavily on diagnostic testing, a fact that the ALJ himself acknowledged by stating that "Dr. Freeman supported his position by noting a CT scan that showed extensive cerebral atrophy." (R. 1062.) While arguing that the objective medical evidence did not support Dr. Freeman's conclusion, the ALJ also simultaneously (and confusingly) contends that Dr. Freeman discounted the opinions of Plaintiff's treating physicians and placed too much weight on diagnostic testing – which constitutes quintessential objective medical evidence. (R. 1063.) Dr. Freeman stated that a number of Plaintiff's diagnoses were "confirmed medically to a high level of certainty" based on imaging and laboratory data. (R. 1032.) The regulations provide that "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [an ALJ should] give that medical opinion." C.F.R. § 404.1527(c)(3). Accordingly, Dr. Freeman's reliance on laboratory findings should lend his opinion more, not less, weight. Moreover, one of the psychological consultative examinations that Dr. Freeman allegedly did not account for resulted in the following notes: Plaintiff's "appearance and hygiene were quite good, that her hair was neatly brushed, her clothing clean and her nails well-kept and polished." (R. 1063.) Yet, a bipolar individual may be both well-groomed and disabled; physical appearance does not necessarily confirm a person's mental condition.

The ALJ also mischaracterizes Dr. Freeman's opinion in finding that he "discount[ed] the reliability of clinical examination findings by Claimant's treating physicians." (R. 1063.) In his

opinion, Dr. Freeman merely noted that the diagnostic reliability of imaging/laboratory data is "extremely high," while that of clinical exam findings is "quite low." (R. 1032.) He goes on to state that "independent of any clinical history or examination findings," the diagnoses were confirmed to a high level of certainty. (R. 1032.) The Court does not construe Dr. Freeman's use of the word "independent" as a signal that he "disregard[ed]" the clinical history, as the Commissioner argues; instead, he was stating that the diagnoses confirmed through imaging were reliable enough to stand on their own. (Dkt. 28 at p. 4.)

The ALJ's challenge of Dr. Freeman's opinion based on its apparent failure to address inconsistencies and evidence of improvement, including reports of Plaintiff's stability, also lacks merit. (R. 1065.) As an initial matter, evidence suggesting that Plaintiff was "stable" prior to January 2013 does not confirm Plaintiff's actual health at the time. Courts have repeatedly held that "a person can have a condition that is both 'stable' and disabling at the same time." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008).

Additionally, although the ALJ asserts that Dr. Freeman "failed to establish a clear and discernable date of disability onset," (R. 1063), the Court finds that Dr. Freeman expressly linked the onset of Plaintiff's disability to April 2007, with "progressive worsening of condition." (R. 1029.) Even if Dr. Freeman had not identified the onset date so clearly, SSR 83-20 allows for an inference to be made as to the onset date for "slowly progressive impairments," as it is "sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20. The ALJ also challenged Dr. Freeman's opinion because his report does not reference neurological treatment between October 13, 2009 and June 2013 and therefore the record "failed to establish a disabling seizure disorder" during that time. (R. 1063–64.) The ALJ's stated reasoning on this point misapprehends Dr. Freeman's opinion. In the

ALJ's own words, Dr. Freeman concluded that Plaintiff suffered from "dementia" with an onset date as early as April 2007. (R. 1062.) Thus, Plaintiff's seizures were not Dr. Freeman's concern. He focused instead on Plaintiff's degenerative brain disorder. Evidence (or lack thereof according to the ALJ) about Plaintiff's seizures was therefore not relevant to assessing Dr. Freeman's conclusions about Plaintiff's brain disorder.

As the ALJ's decision to afford little weight to Dr. Freeman's opinion was not supported by substantial evidence, the matter must be remanded.

Dr. Shapiro

In addition, the ALJ gave the "greatest weight" to Dr. Cremerius' opinion while finding that Dr. Shapiro's "less than detailed opinion" lacked record support. (R. 1060.) The Court agrees with Plaintiff that the ALJ failed to provide an adequate explanation for relying on Dr. Cremerius' opinion rather than Dr. Shapiro's, both clinical psychologists. (R. 1059, 1338.) Although Dr. Cremerius and the ALJ valued a "mini mental status exam" conducted on June 11, 2013 where Plaintiff scored "reasonably well," (R. 48), "[p]eople with executive cognitive dysfunction can have a normal MMSE score but still have severe functional limitations." https://www.crisisprevention.com/Blog/October-2010/A-Discussion-of-Cognitive-Screening-Instruments-an (last visited Apr. 11, 2018). Moreover, the high score on the mini mental status exam contradicts the consistent opinion of medical experts (including Dr. Cremerius) that Plaintiff had a marked impairment by at least June of 2013. (R. 50.) The ALJ also incorrectly contends that Dr. Shapiro's conclusions relied on the reports of Robert Walsh, PA-C, who in turn found a disability onset date of March 2013. (R. 1054–55.) This is not accurate. Dr. Shapiro relied on a consultative examination from April 2010 which revealed "severe impairment in social, occupational, and interpersonal functioning." (R. 1095.) Additionally, Dr. Shapiro

considered a statement from Plaintiff's husband identifying the many ways that Plaintiff's activities of daily living were limited – she had difficulty cleaning, cooking, and bathing independently. (R. 1099.) In other words, Dr. Shapiro followed the guidance provided by SSR 83-20 and considered the appropriate forms of evidence to relate a disabling impairment back to an earlier time period. SSR 83-20 ("With slowly progressive impairments . . . . it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process."). Dr. Cremerius did not consider such third-party evidence. Accordingly, the ALJ failed to adequately explain why Dr. Cremerius' opinion was valued at the expense of Dr. Shapiro's opinion.

**Analysis of Subjective Symptoms**

The ALJ also failed to provide substantial evidence for his finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not fully supported prior to January 1, 2013." (R. 1058.) As Plaintiff's symptom evaluation is informed by a proper assessment of the medical evidence, the ALJ will have to revisit this issue on remand as well. The Court notes for the record that the ALJ did not provide a cohesive discussion on the issue; instead, he merely states he reached his conclusion "for the reasons explained in this decision." (R. 1058.) The ALJ includes no analysis of SSR 96-7p[1] and Plaintiff's activities of daily living, which were at odds with the ALJ's conclusion that Plaintiff could perform work at all exertional levels. On remand, the ALJ must provide a comprehensive

_____

[1] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.*, 2016 WL 1119029, at *1 (Mar. 16, 2016). Both regulations, however, require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id.* at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

review of the SSR 96-7/16-3p factors and clearly identify which of Plaintiff's statements are not entirely credible, if any.

## Consideration of Third-Party Evidence

The Court also notes that the ALJ's valuation of certain third-party statements was erroneous. As an example, although Plaintiff's husband's statement was consistent with evidence in the record (e.g. Plaintiff "required greater assistance performing activities of daily living" (R. 1065)), the ALJ discounted it because the husband has "some financial interest in [Plaintiff] receiving benefits." (R. 1066.) Although the Commissioner is correct that an ALJ may question the reliability of third-party statements, rejecting a statement for this reason alone was improper. Indeed, SSR 96-7p/SSR 16-3p expressly contemplate that an ALJ consider opinions of non-medial sources, including a spouse. It would therefore be illogical for the reality of a spouse financially benefitting from disability benefits to serve as a bar on taking into account spousal statements.

## Residual Functional Capacity Analysis

Plaintiff also challenges the ALJ's RFC analysis. The Court declines to discuss this issue at length given the need for remand that already exists.

### Conclusion

For the reasons set forth above, the Court denies the Commissioner's motion for summary judgment [27], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                                **ENTERED:  May 24, 2018**

_M. David Weisman_

**M. David Weisman**
**United States Magistrate Judge**